## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **JOSEPH W.,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | |
| **FRANK BISIGNANO,**[1] **Commissioner of Social Security,** | **Case No. 1:25-cv-00029-JCB** |
| **Defendant.** | **Magistrate Judge Jared C. Bennett** |

### PROCEDURAL BACKGROUND[2]

Plaintiff Joseph W. ("Plaintiff") alleges disability due to various physical and mental

impairments. Plaintiff applied for Disability Insurance Benefits under Title II of the Social

Security Act[3] in August 2022.[4] Plaintiff's claim was denied initially[5] and upon reconsideration.[6]

On February 1, 2024, Plaintiff appeared with counsel for a hearing before an Administrative Law

Judge ("ALJ").[7] The ALJ issued a written decision on March 18, 2024, denying Plaintiff's

---

[1] Frank Bisignano is now the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), he has been substituted as the Defendant in this case. ECF No. 12.

[2] Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment. ECF No. 7.

[3] 42 U.S.C. §§ 401-434.

[4] ECF No. 11, Administrative Record ("AR ___") 215-16.

[5] AR 82-89.

[6] AR 90-98.

[7] AR 31-58.

claim.[8] Plaintiff appealed the adverse ruling, and, on January 15, 2025, the Appeals Council denied his appeal,[9] making the ALJ's decision final for purposes of judicial review.[10] Plaintiff then filed suit in this court seeking review of Commissioner of Social Security Frank Bisignano's ("Commissioner") final decision.[11]

### STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[12] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[13] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[14] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[15] "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[16]

---

[8] AR 14-30.

[9] AR 1-6.

[10] 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

[11] ECF No. 1.

[12] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation modified).

[13] 42 U.S.C. § 405(g).

[14] *Lax*, 489 F.3d at 1084 (citation modified).

[15] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (citation modified).

[16] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation modified).

The aforementioned standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[17] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[18]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[19]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[20] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[21] Before considering step four, however, the ALJ must determine the claimant's residual functional capacity ("RFC").[22] An individual's RFC is his greatest ability to do physical and mental work activities on a regular and

---

[17] 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[18] 20 C.F.R. § 404.1520(a)(4); *see also Williams*, 844 F.2d at 750.

[19] *Williams*, 844 F.2d at 750-51 (citation modified); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

[20] 20 C.F.R. § 404.1525(a); *see also* 20 C.F.R. § 404.1520(a)(4)(iii).

[21] *Williams*, 844 F.2d at 751.

[22] 20 C.F.R. § 404.1520(a)(4), (e).

continuing basis despite limitations from his impairments.[23] In making this determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. [24]

For the fourth step, the claimant must show, given his RFC, that his impairments prevent performance of his "past relevant work."[25] "If the claimant is able to perform his previous work, he is not disabled."[26] If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability."[27]

From here, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[28] The decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of his age, education, and work experience."[29] If it is determined that the claimant "can make an adjustment to other work," he is not disabled.[30] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," he is disabled and entitled to benefits.[31]

---

[23] *Id.* § 404.1545(a)(1), (b)-(c).

[24] *Id.* § 404.1545(a)(2).

[25] 20 C.F.R. § 404.1520(a)(4)(iv).

[26] *Williams*, 844 F.2d at 751.

[27] *Id.*

[28] *Id.*

[29] *Id.* (citation modified); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

[30] 20 C.F.R. § 404.1520(a)(4)(v).

[31] *Id.*

**ANALYSIS**

**I.    The Court Cannot Meaningfully Review the ALJ's Decision Because He Failed to Explain Why He Accepted Some but Rejected Other Opinions of Dr. Thomas L. Lombardi, Whose Opinions the ALJ Found to Be Partially Persuasive.**

The ALJ's decision must be reversed and remanded so that he can explain why he accepted some but rejected other opinions of Dr. Lombardi, whom the ALJ found to be partially persuasive. Where an ALJ declines to reject a medical opinion at step four—i.e., the ALJ determines that the medical opinion is entitled to at least some or partial weight—the ALJ must explain why he/she adopts some but not all recommendations in the medical opinion. By illustration, in *Haga v. Astrue*,[32] "the ALJ never stated that he rejected" a medical opinion from a medical source but, instead, adopted some of the medical opinion's recommendations but rejected others.[33] The Tenth Circuit reversed and remanded.[34] Although the court recognized that the ALJ was "entitled to resolve any conflicts in the record," the fact that the ALJ left "unexplained why [he] adopted some of [the medical opinion's] restrictions but not others" required remand "so that the ALJ [could] explain the evidentiary support for his RFC determination."[35]

Similarly, in *Benavidez v. Colvin*,[36] the ALJ afforded great weight at step four to three medical sources who provided medical opinions.[37] Nevertheless, the ALJ adopted only some of

---

[32] 482 F.3d 1205 (10th Cir. 2007).

[33] *Id*. at 1208.

[34] *Id*. at 1208-09.

[35] *Id*. at 1208.

[36] 650 F. App'x 619 (10th Cir. 2016).

[37] *Id*. at 621.

5

the recommendations in those medical opinions while rejecting others without explanation.[38]

Hearkening to *Haga*, the Tenth Circuit again reversed and remanded because "an ALJ cannot, without explanation, adopt some restrictions assessed by a physician and reject others that the physician also assessed."[39] The *Benavidez* court highlighted that its holding was consistent with the Commissioner's policy, which provides that "'[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'"[40] The Tenth Circuit has applied this same rule when the ALJ has accorded only partial weight to medical opinions.[41]

Synthesizing *Haga*, *Benavidez*, *Lopez*, and the Commissioner's policy statements provides a clear rule: Where an ALJ affords at least some weight (i.e., something other than outright rejection) to a medical source who provides a medical opinion, the ALJ must explain why he/she accepted some of the medical opinion's recommendations while rejecting others. Failure to do so is error and is reversible if the error is not harmless.[42] As shown below: (A) Dr. Lombardi is a medical source who provided medical opinion that the ALJ found to be partially persuasive; (B) although the ALJ accepted some of Dr. Lombardi's recommendations while rejecting others, the ALJ erred by not explaining why he rejected some of those

---

[38] *Id.*

[39] *Id.*

[40] *Id.* at 622 (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

[41] *Lopez v. Colvin*, 642 F. App'x 826, 829 (10th Cir. 2016).

[42] *Benavidez*, 650 F. App'x at 622 (engaging in a harmless error analysis regarding the ALJ's failure to explain why he adopted some recommendations from a medical source while rejecting others).

recommendations; and (C) this error is harmful. Therefore, the Commissioner's decision is reversed and remanded.

A. Dr. Lombardi Is a Medical Source Who Provided Medical Opinion That the ALJ Found Partially Persuasive.

Dr. Lombardi is a medical source who proffered a medical opinion, which the ALJ found to be partially persuasive. Under the Commissioner's regulations, "[a] 'medical opinion' is a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s)," including limitations based on a list of enumerated criteria.[43] The term "medical source" includes a "[l]icensed physician (medical or osteopathic doctor)."[44] Dr. Lombardi is a licensed physician who provided an opinion about how long Plaintiff could sit, stand, walk, use his hands, concentrate, persist, and maintain pace.[45] The ALJ found "the opinions of Dr. Lombardi [to be] partially persuasive."[46] Accordingly, if the ALJ rejects some of Dr. Lombardi's opinions, the ALJ is required to explain why.

B. The ALJ Did Not Explain Why He Accepted Some of Dr. Lombardi's Recommendations While Rejecting Others.

The ALJ's explanation for why he accepted some of Dr. Lombardi's recommendations but rejected others is incomplete. The table below provides a summary of Dr. Lombardi's recommendations in the left column with the ALJ's disposition of each opinion in the right.

---

[43] 20 C.F.R. § 404.1513(a)(2)(i)-(iv).

[44] Id. § 404.1502(a)(1).

[45] AR 22-23.

[46] AR 23.

| Dr. Lombardi's Recommendations | The ALJ's Disposition of Dr. Lombardi's Recommendations |
|---|---|
| Plaintiff can sit for up to 4 hours.[47] | By finding Plaintiff can engage in sedentary work under 20 C.F.R. § 404.1567(a), the ALJ appears to adopt this recommendation.[48] |
| Plaintiff can stand for up to 1 hour and walk for zero hours.[49] | The ALJ does not address this recommendation specifically but finds that Plaintiff can engage in sedentary work, which, by definition, includes "walking and standing . . . occasionally."[50] The term "occasionally" includes up to 1/3 of an 8-hour workday.[51] In other words, the ALJ found that Plaintiff could stand and walk up to 2.7 hours per workday, which contradicts Dr. Lombardi's recommendation without explanation. |
| Plaintiff must rest or lie down for 4 hours in an 8-hour workday.[52] | The ALJ does not address this recommendation specifically, but the definition of "sedentary work" does not provide for resting for half of an entire workday. Implicitly, the ALJ must have rejected Dr. Lombardi's recommendation because the ALJ found Plaintiff was able to perform jobs in the national economy even though the vocational expert testified that a person "off task 12 to 15 percent of scheduled production time" could not perform any of the identified jobs in the national economy.[53] If being off task 12-15 percent of the time means Plaintiff cannot perform the identified jobs in the national economy, then being off task 50 percent of the time surely would too. |

[47] AR 22-23.

[48] AR 20-24.

[49] AR 23.

[50] 20 C.F.R. § 404.1567(a).

[51] POMS TN27 (06-24).

[52] AR 23.

[53] AR 56-57.

8

| | |
|---|---|
| Plaintiff can occasionally lift and carry up to 5 pounds and rarely up to 10 pounds.[54] | The ALJ's sedentary work finding is consistent with Dr. Lombardi's recommendation because "[s]edentary work involves lifting no more than 10 pounds at a time."[55] |
| Plaintiff has "diminished grasping to up to 10%, up to 50% reaching forward, and up to 10% of fine manipulation in the bilateral hands."[56] | The ALJ specifically rejects Dr. Lombardi's recommendation by finding that it was inconsistent with other record evidence.[57] |
| Plaintiff would need to miss work more than 4 days per month.[58] | The ALJ does not address this recommendation. Implicitly, the ALJ must have rejected Dr. Lombardi's recommendation because the ALJ found Plaintiff was able to perform jobs in the national economy even though the vocational expert testified that a person "off task 12 to 15 percent of scheduled production time" could not perform any of the identified jobs in the national economy.[59] |
| Plaintiff has moderate limitations in the ability to concentrate, persist, or maintain pace, but has no limitations in the remaining broad areas of mental functioning.[60] | The ALJ specifically rejects Dr. Lombardi's recommendation because "the record is too limited to evaluate Dr. Lombardi's opinions of [Plaintiff]'s mental impairments."[61] |
| Plaintiff has a slight high steppage bilateral gait with little change from Plaintiff's prior lower extremity exam.[62] | Contextually, it appears that the ALJ assesses this observation as of little consequence such that it did not impact the RFC.[63] |

---

[54] AR 23.

[55] 20 C.F.R. § 404.1567(a).

[56] AR 23.

[57] AR 23

[58] AR 23.

[59] AR 56-57.

[60] AR 23.

[61] AR 23.

[62] AR 23.

[63] AR 20-24.

9

This summary of Dr. Lombardi's opinions and how the ALJ dealt with them reveals that the ALJ accepted some, rejected others with an explanation, and rejected others without explanation. And given that the ALJ found Dr. Lombardi at least "partially persuasive,"[64] the ALJ's failure to explain why he rejected some of Dr. Lombardi's opinions is error.

Nevertheless, the Commissioner argues that the ALJ was not required to further explain why he rejected some of Dr. Lombardi's recommendations because "[i]t is clear which portions of the opinion were rejected, as they did not get incorporated into the RFC."[65] Not only is there no authority to support this argument, but, worse yet, it ignores the clear rule from the Tenth Circuit set forth above. Notice that in *Haga*, *Benavidez*, *Lopez*, and the Commissioner's own policy statements, the analysis an ALJ is required to perform is not merely to compare the medical opinions that are entitled to at least some weight with the RFC and then assume that if a particular recommendation does not appear in the RFC that the ALJ rejected it. If that were the rule, then *Haga*, *Benavidez*, and *Lopez* would all have resolved in the Commissioner's favor, and the Commissioner's policy statement itself would be superfluous because, after all, the RFC would speak for itself. But this line of cases and the Commissioner's own policy show that the ALJ's explanation for *why* he/she rejected a medical opinion that is entitled to some weight matters most for judicial review of the RFC. Thus, the Commissioner's argument is unpersuasive because the ALJ erred by failing to explain why he rejected some of Dr. Lombardi's opinions.

---

[64] AR 23.

[65] ECF No. 19 at 16.

C.  The ALJ's Error to Explain Why He Rejected Some of Dr. Lombardi's Opinions Was Not Harmless.

Although the ALJ erred, the court remands for further proceedings only because the error was harmful.[66] In the Social Security context, the court considers errors harmful when they undermine confidence in the determination of the case.[67] As illustrated above, some of Dr. Lombardi's opinions that the ALJ rejected without explanation go to the heart of the RFC determination (i.e., the most Plaintiff can do), and that determination directly impacts whether there are jobs in the national economy Plaintiff can perform. For example, if Plaintiff needs to be off task between 12-15 percent of the time per workday, the vocational expert opined that Plaintiff could not perform any of the identified sedentary jobs in the national economy.[68] Dr. Lombardi opined that Plaintiff would need to be resting 50 percent of any given workday and would miss at least 4 workdays per month (which is 20 percent of the time in a 4-week work month). Additionally, Dr. Lombardi's findings call into question whether Plaintiff can perform sedentary work at all given how little Plaintiff can stand or walk. Despite their importance to the RFC and, consequently, the disability determination, the ALJ provides no explanation for rejecting those opinions despite accepting other opinions from Dr. Lombardi. This harmful error should be resolved on remand.[69]

---

[66] *Benavidez*, 650 F. App'x at 622.

[67] *See, e.g.*, *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

[68] AR 56-57.

[69] The court has considered Plaintiff's other arguments and finds that they lack merit. Therefore, the court does not consider those other arguments further.

## ORDER

For the reasons stated above, the Commissioner's decision is REVERSED, and this case

is REMANDED to the Commissioner for proceedings consistent with this Memorandum

Decision and Order.

IT IS SO ORDERED

DATED this 20th day of March 2026.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge